**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| LEJUAN CARTER, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 4:05-CV-2346 CAS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**<u>MEMORANDUM AND ORDER</u>**

The matter is before the Court on movant Lejuan Carter's motion to vacate, set aside, or correct his sentence made pursuant to 28 U.S.C. § 2255. Having previously found three of the five grounds for relief movant raised in his petition to be without merit, the Court now finds the remaining claims should be dismissed, and movant's motion denied.

*Factual & Procedural Background*

On May 27, 2004, a criminal complaint was filed charging movant, having been previously convicted of a felon, with possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On June 24, 2004, movant was indicted on this same charge. The Federal Public Defender's Office was appointed to represent movant. In September 2004, the parties reached a plea agreement under which movant would plead guilty to the charge against him.

Movant pleaded guilty as charged before the Court on September 28, 2004, pursuant to a written Plea Agreement, Guidelines Recommendations and Stipulation ("Plea Agreement"). For the purpose of sentencing, the parties agreed that the base offense level should be increased by two levels under U.S.S.G. Section 2K2.1(b)(1)(A) because the offense involved three firearms, and increased by two levels under 2K2.1(b)(4) because one of the firearms was stolen. (Plea Agreement at 6,¶

3.B.(2)). The parties agreed that movant's criminal history category would be determined by the District Court after review of a presentence report. (Plea Agreement at ¶ 3.G). The matter was set for sentencing and a Presentence Investigation Report ("PSR") was ordered.

The PSR recommended that movant's base offense level was 24 because movant "committed the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." (PSR at 3). Because the offense involved three firearms, the PSR recommended that two levels be added pursuant to U.S.S.G. Section 2K2.1(b)(1)(A), and that two levels be added under 2K2.1(b)(4) because one of the firearms was stolen. (PSR at 3). The PSR also recommended that movant should receive a three-level reduction for acceptance of responsibility under Section 3E1.1(a) and (b), for a total offense level of 25. (PSR at 4). In the PSR, movant's criminal history was calculated to be a category VI, based upon a total of thirteen criminal history points. (PSR at 9). The Guidelines' sentencing range was determined to be 110 to 120 months. (PSR at 12).

The Plea Agreement states in part that movant was fully satisfied with the representation he received from his attorney, and that movant had reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. (Plea Agreement at 14). The Plea Agreement also states that defense counsel completely and satisfactorily explored all areas defendant had requested relative to the government's case and any defenses. (Plea Agreement at 14). Movant waived his right to file an appeal with respect to non-jurisdictional issues. (Plea Agreement at 2-3). Movant also waived all rights to contest the conviction or sentence in any post-conviction proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (Plea Agreement at 3)

On December 21, 2004, movant appeared with his attorney, Lucy Liggett of the Federal Public Defender's Office, for sentencing. The Court sentenced movant to 100 months imprisonment and two years supervised release. The Court found that movant's criminal history had been overstated as to multiple driving convictions, and it granted a downward departure. No direct appeal was filed.

Movant raised five grounds for relief in his pro se § 2255 motion. In a Memorandum and Order dated December 16, 2008, the Court dismissed three of the five claims without merit. As to the two remaining claims – ineffective assistance of counsel for "failing to file a notice of appeal (Ground One) and ineffective assistance of counsel for "failing to submit a private psychological examination report which had established grounds to depart downward for diminished capacity" (Ground Three) – the Court determined an evidentiary hearing was necessary to decide the issues. Movant was appointed counsel, and an evidentiary hearing was held on February 3, 2009, to determine whether movant instructed his trial counsel to file a notice of appeal, and the facts relating to counsel's failure to submit movant's psychological examination report and seek a departure based on diminished capacity. Movant testified at the hearing, as did his former counsel, Lucy Liggett.

***Testimony Presented at the Evidentiary Hearing***

***Lucy Liggett's Testimony***

Ms. Liggett testified that she represented movant in the underlying criminal proceedings. She testified that in September 2004, she met with movant to discuss a proposed plea agreement and stipulation. She stated that when representing a client such as movant it was her practice to go over the terms of a plea agreement paragraph by paragraph, and that she discussed with movant the appeal waiver contained in the plea agreement.

According to Ms. Liggett, at this meeting or shortly thereafter, movant decided to enter a guilty plea under the terms of the plea agreement and stipulation. Sometime thereafter, movant raised with Ms. Liggett the possibility of pursuing a diminished capacity defense for a downward departure. Movant had previously been shot and received multiple gunshot wounds, and it was his theory that as a result of this trauma, he was carrying one of the guns involved in his conviction for his own protection. Ms. Liggett arranged for movant to be seen by a forensic psychologist, Dr. Armour.

Ms. Liggett testified that she did not receive a copy of Dr. Armour's report until shortly before sentencing. Dr. Armour concluded in his report that movant was suffering from post-traumatic stress disorder ("PTSD") and that he qualified for "diminished capacity" consideration as a result. Dr. Armour states in his report, "[movant's] decision to have a firearm in his possession was in part motivated by his PTSD symptoms and his fear of being harmed again." The report also contained information indicating that movant has been arrested for driving a stolen vehicle as a juvenile. The PSR, on the other hand, stated that movant did not have a juvenile record.

Ms. Liggett testified that in her opinion the diminished capacity defense was not compatible with the motion for departure based on overstated criminal history, and it was her professional opinion that the overstated criminal history was a much stronger argument. She testified that she showed movant Dr. Armour's report and discussed with him the contents thereof. She stated that she advised movant that should she submit the psychological evaluation report to the Court, it was likely that the prosecutor would ask for a continuance to further investigate his criminal history and that he could be found to be an armed career criminal. She testified that movant still wanted to proceed with the diminished capacity defense but she ignored his wishes and did not submit the psychological evaluation report at the sentencing hearing or move for a departure based on diminished capacity.

Ms. Liggett met with movant following the sentencing hearing. As detailed above, the Court found petitioner's criminal history to be overstated and it granted a downward departure. The Guidelines' sentencing range was determined to be 110 to 120 months, and movant received a sentence of 100 months. Ms. Liggettt testified that she and the movant had a long discussion about the sentence he received, and in the end, he indicated that he was satisfied. She testified that he did not ask her to file a notice of appeal.

During Ms. Liggett's testimony, movant's habeas counsel introduced a letter from movant addressed to Ms. Liggett from May 2005, in which movant stated that he was unhappy that she had not filed a notice of appeal. Ms. Liggett stated again that movant had not asked that she file an appeal following sentencing, and that the contents of the letter were contrary to her recollection of the events of December 21, 2004, the day of sentencing. Ms. Liggett also testified that the deadline to file the notice of appeal had long expired by the time she received movant's May 2005 letter.

*Movant's Testimony*

Movant testified that he had the opportunity to meet with Ms. Liggett and go over issues in his case. He confirmed that it was his idea to pursue a diminished capacity defense, and that Ms. Liggett arranged for the pscyological evaluation upon his request.

Movant testified that he was never shown a copy of the Dr. Armour's report, and Ms. Liggett did not discuss the content of the report with him. He stated that on the date of the hearing, Ms. Liggett informed him that she was not going to file the report and seek a departure based on diminished capacity. He testified that he indicated to her that he wanted to pursue a departure based on diminished capacity in any event, but she ignored his wishes. As for the sentence, movant testified that he was not satisfied with the sentence he received, and he told Ms. Liggett to file a notice of appeal.

*Discussion*

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987) (citing Kaufman v. United States, 394 U.S. 217 (1969)).

Movant claims he received ineffective assistance of counsel and was denied due process of law and equal protection in that his attorney failed to file a notice of appeal despite being instructed to do so. He also claims he received ineffective assistance of counsel and was denied due process of law and equal protection in that his attorney failed to submit his psychological examination report and seek a downward departure based on the theory of diminished capacity.

In order to prevail on a claim of ineffective assistance of counsel, movant must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, movant must prove that, "in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if movant satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 691. He must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, to demonstrate prejudice he must show that, but for counsel's error, he would not have pled guilty, but would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### A. Failure to File a Notice of Appeal.

An attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling a movant to § 2255 relief. Watson v. United States, 493 F.3d 960 963-64 (8th Cir. 2007); Evans v. United States, No. 1:05CV0099 ERW, 2006 WL 1300672, at * 5 (E.D. Mo. May 7, 2006). No inquiry into prejudice or likely success on appeal is necessary. Watson, 493 F.3d at 963-64; Holloway v. United States, 960 F.2d 1356-57 (8th Cir. 1992). If it is established movant expressed a desire to file an appeal and his counsel failed to do so, the appropriate remedy is to re-sentence movant, thus affording him an opportunity to take a timely direct appeal. Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000).

For movant's claim to succeed, movant must establish the factual basis to support his claim. It is movant's burden to show that he instructed his attorney to file an appeal. Holloway, 960 F.2d at 1357. The Court finds movant has failed to establish that he asked his attorney to file a notice of appeal. The Court finds movant's testimony that he requested Ms. Liggett to file an appeal to be not credible. His testimony was in direct contradiction to that of Ms. Liggett, who is more credible. Movant not only has a motive to lie, he was evasive during cross examination and outright lied as to

the circumstances of underlying offense to which he pleaded guilty. Furthermore, in the psychological evaluation report, the same report movant seeks to have admitted, Dr. Armour noted, "[movant] denied problems with stealing but stated that he had some problem with lying, but stated that he would tell the truth if her [sic] were not in trouble." The Court further finds Ms. Liggett's testimony – that movant appeared satisfied with the sentence and did not request that she file a notice of appeal – to be credible.

Although his right to appeal does not depend on this request, the "desire to appeal must be manifest." Barger, 204 F.3d at 1182. After considering the testimony from the evidentiary hearing and the record generally, the Court finds it is more likely than not that movant did not request his counsel to file a notice of appeal, and movant has failed to demonstrate that he communicated to Ms. Liggett a desire to file an appeal. See United States v. Robinson, 171 Fed. Appx. 536, 537-38 (8th Cir. 2006) (finding, in a similar factual scenario, that a defendant did not ask his counsel to file a notice of appeal). Ground One is without merit.

### B. Failure to Submit the Psychological Evaluation Report and Seek a Diminished Capacity Departure.

It is undisputed that Ms. Liggett failed to submit Dr. Armour's psychological evaluation report to the Court and seek a downward departure based on diminished capacity, despite being instructed to do so by her client. While it is true that the accused has the ultimate authority to make "certain fundamental decisions regarding a case," such as whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal, the Court has found no authority for the notion that the decision whether to pursue a certain argument during sentencing is a personal decision for the defendant, as opposed to counsel, to make. Jones v. Barnes, 463 U.S. 745, 751 (1983) (appellate counsel does not have constitutional duty to raise every nonfrivolous issue requested by defendant).

- 8 -

See also Wainwright v. Sykes, 433 U.S. 72, 91 n.14 (1977) (noting defendant may be bound by the strategic trial decisions of his or her attorney). Ms. Liggett testified that she made the decision not to pursue the diminished capacity argument because, in her view, a request for a departure based on overstated criminal history was a stronger argument, and the two were inconsistent. The Court finds the decision whether to submit the diminished capacity argument at sentencing was within defense counsel's strategic control, despite movant's disagreement with his counsel's decision, and Ms. Liggett's performance was not deficient for failing to raise the issue. Id. Cf. Brookhart v. Janis, 384 U.S. 1, 7 (1966) (counsel does not have the power to enter a plea which is inconsistent with his or her client's expressed desire and thereby waive his client's constitutional right to plead not guilty).

But even if the Court were to conclude Ms. Liggett was constitutionally deficient in not following movant's instructions, the Court finds movant suffered no prejudice as a result. In addition to the fact that Dr. Armour's report indicates movant's criminal history might have been actually under-reported, not overstated as the Court found which it granted a departure, the Court finds the report does not support a § 5K2.13 departure. Under the sentencing guidelines that were applicable at the time, "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense." U.S.S.G. § 5K2.13 (2004).

Movant would have had his attorney argue that he was carrying a gun as a convicted felon for his protection because he had been attacked in the past. Dr. Armour concluded in his report that "[movant's] decision to have a firearm in his possession was in part motivated by this PTSD

symptoms and his fear of being harmed again." This, however, does not explain why defendant was carrying the two other guns. In his report, Dr. Armour also described movant's version of the charged offense : "When asked for his version of the alleged offense, Mr. Carter stated that he had been in debt $500 to a person but did not have the money to pay the debt. He stated that he paid back $200. He stated that he was told that he could get rid of the remaining debt by delivering some guns. . . . He stated that he had not wanted to transfer the guns but did want to pay off the money he owed." PTSD may explain possession of one firearm, but it does not explain why movant was transferring the two other guns involved in the offense

Furthermore, even if the Court were to have credited Dr. Armour's report and subtracted the two-point 2K2.1(b)(1)(A) enhancement, which was added because the offense involved three guns, movant would have had a total offense level of 23 and Criminal History Category VI. This offense level carried a sentencing range of 92-115 months. Movant was sentenced to 100 months, which is on the low-end of this range. Consequently, movant cannot establish he was prejudiced by the omission of this report and, in fact, he likely reaped a benefit by the report not being raised at the sentencing hearing. Movant cannot establish prejudice as a result of his attorney's failure to pursue a departure based on diminished capacity, therefore, Ground Three is without merit.

Accordingly,

**IT IS HEREBY ORDERED** that movant Lejuan Carter's motion made pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **DENIED** and his claims are **DISMISSED** with prejudice. [Doc. 1]

A separate Judgment will accompany this order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   17th   day of March, 2009.